UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

CIVIL ACTION NO. 10-320-JBC

DAVID O. BRAY, PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

* * * * * * * * * *

This matter is before the court on cross-motions for summary judgment on plaintiff David Bray's appeal of the Commissioner's denial of his application for supplemental security income and disability insurance benefits (R. 12, 18). Bray brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The court, having reviewed the record and being otherwise sufficiently advised, will grant the Commissioner's motion and deny Bray's motion.

I. FACTUAL BACKGROUND

The plaintiff, David O. Bray, filed an application[1] for supplemental security income and disability insurance benefits on December 30, 2008. He alleges disability beginning on February 1, 2006, for mental limitations, back pain, vision problems, learning disorder, anxiety, anger and anti-social behavior. His claim was

---

1 In his opinion, the ALJ noted that Bray filed a prior application in 2001 that was initially denied, not pursued further and is now administratively final. A.R. 284.

1

denied initially on May 26, 2009, and upon reconsideration on August 19, 2009. Thereafter, Bray filed a written request for a hearing on September 4, 2009. Bray appeared before the Administrative Law Judge ("ALJ") and testified along with an impartial vocational expert, Cathy Sanders. *See* A.R. 13-29. Bray appeared at the hearing, which lasted approximately twenty minutes, with a non-attorney representative, Brenda Bailey, and testified that he lives at home with his wife and three children. In addition, he stated that he had an eighth-grade education. He informed the ALJ that he obtained a driver's license by passing a written examination. Bray is currently unemployed but discussed his past relevant jobs, including press operator, cook, assembly factory worker, and lawn worker. He alleged disability, claiming, "I just can't put up with people" and indicated that he had problems reading and writing. A.R. 20, 24. He stated that he spends most of his time at home helping his wife with household chores and spending time with his three children, including taking his son fishing and occasionally watching his son play football. The vocational expert Sanders also testified at the hearing that Bray would be able to perform jobs such as cleaner, lawn worker, and laborer. A.R. 27.

## II. THE ALJ'S DETERMINATION

Applying the traditional five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003), the ALJ found that Bray had not engaged in substantial gainful activity since the application date; that Bray had a severe impairment of borderline intellectual functioning; and that Bray did

2

not have an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Appendix 1. Thus, the ALJ could not find Bray was disabled on that basis. The ALJ then proceeded to Step 4, at which the ALJ determined that Bray had no past relevant work. At Step 5, the ALJ concluded that significant jobs in the national economy exist that Bray could perform, such as cleaner, dishwasher, vehicle washer, and laborer, considering his age, education, work experience and residual functional capacity.

The ALJ issued a decision on April 1, 2010, finding that Bray was not disabled and thus not entitled to supplemental security income or disability insurance benefits. On October 1, 2010, the Appeals Council denied Bray's request for review and the ALJ's decision became the final decision of the Commissioner of Social Security. Bray then filed this action for judicial review in this court pursuant to 42 U.S.C. § 405(g).

## III. LEGAL ANALYSIS

Bray raises seven arguments on appeal: (1) the ALJ failed to properly develop the record for a plaintiff not represented by an attorney; (2) the ALJ erred at step two in failing to find that the claimant's mental condition, visual deficits, and low back pain were severe impairments; (3) the ALJ failed to find that the claimant's mental condition satisfied the second prong of the Listing in 12.05C; (4) the ALJ failed to adopt the exertional and non-exertional restrictions in determining claimant's residual functional capacity; (5) the ALJ erred in finding that the claimant had an eighth-grade

education; (6) the ALJ erred in excluding restrictions from the examining psychologist in forming his hypothetical; and (7) the ALJ failed to resolve conflicts between the vocational testimony and the Dictionary of Occupational Titles. For the following reasons, the ALJ's decision was supported by substantial evidence and must be upheld.

**1. The ALJ's duty to develop the record**

Bray, relying on *Lashley v. Sec. of Health and Human Servs.*, contends that the ALJ failed in his duty to properly develop the record because he was not represented by counsel and the ALJ did not address missing school records, medical records, and x-rays. 708 F.2d 1048 (6th Cir. 1983). The ALJ has a special, heightened duty to develop the record when the claimant is unrepresented by counsel, not capable of presenting an effective case, and is unfamiliar with the hearing procedures. *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 459 (6th Cir. 2008)(citing *Lashley*, 708 F.2d at 1051-52)). The fact that Bray appeared at the hearing without counsel is not alone cause for error. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). Rather, each case should be examined on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing. *Id*. at 856.

Although this case appears similar to *Lashley* in that the hearing was rather brief and that both claimants had limited education and mental abilities, the ALJ in this case did fulfill his duty to fully develop the record. Here, Bray was represented at the

4

hearing by a non-attorney representative, Brenda Bailey, as permitted by the regulations at the administrative level. *See* 42 U.S.C. § 406(a); 20 C.F.R. § 404.1705(b). At the February 9, 2010, hearing the ALJ specifically asked representative Bailey, "are there any other records we may expect to receive after today?" to which she replied, "No." A.R. 15-16. The ALJ probed further, asking the representative to clarify the existing medical records submitted in the file concerning an outstanding medical record from a visit to Dr. Kishore and a mention of a visit to Dr. Schremely at Compcare. *Id*. at 16. Concluding with his inquiry into the medical records, the ALJ directed to the representative, "It doesn't sound like anything else is out there, but if there is we can hold the record open." *Id*. Clearly, the ALJ inquired into the existence of Bray's medical records and gave him ample opportunity to supplement the record.

As to school records, a letter directed to the Clay County Board of Education was sent on January 8, 2009, requesting information on Bray, but apparently there was no response. A.R. 220-221. Bray argues that the ALJ erred in failing to admit school records from a prior file but fails to point out that the ALJ had access to any such file. In the ALJ's opinion, he specifically states that Bray's most recent application was filed in September 2001, was denied at the initial level, not pursued further, and is now final. *See* A.R. at 284. There is no mention of any other applications or further reference to school records in the ALJ's opinion. Therefore, on this record, there is no evidence to support Bray's contention that the ALJ should

5

have admitted any prior school records.

Bray's assertion that the ALJ failed to request outstanding x-rays is not enough to support a claim that the ALJ did not fully develop the record. Bray reported to Dr. Hoskins at the consultative exam that he had x-rays taken three months prior to that examination, but that he did not know the findings. A.R. 237. However, he also reported that he had no treatment for physical or mental conditions and that he was not currently taking any medications. *Id*. at 236-37. At the hearing, Bray was given ample opportunity to supplement the record. Bray offers no additional insight in his brief regarding what these x-rays refer to or how they would have shown a disability or impairment. *See* R. 18 at 5. Thus, Bray's contention that the ALJ failed to fully develop the record is without merit.

### 2. The ALJ's findings in step two that Bray's visual deficits, back pain and anxiety were not severe impairments

The ALJ's determination that Bray's visual deficits, back pain, and anxiety were not severe impairments is supported by substantial evidence. A "severe" impairment must significantly limit the claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); 404.920(c). In making his determination that Bray's back pain and visual deficits were not severe impairments, the ALJ relied on the consultative exam of Dr. Hoskins. Hoskins found that Bray was able to "walk normally" and had a "full range of motion in his back." In addition, Dr. Hoskins determined that Bray had vision of "20/50 uncorrected." A.R. 287. According to Bray, he "is supposed to wear glasses but can't afford them." A.R. 155. The ALJ

6

indicated in his report that he relied on a state agency report that examined the medical records and determined that Bray's alleged impairments posed no significant limitations on work activities and were considered not severe. A.R. 287, 241. Neither Bray nor his non-attorney representative mentioned either his back pain or visual deficits at the hearing before the ALJ. Bray offers no evidence to contradict the findings of Dr. Hoskins or show why the ALJ should not have relied on the medical opinions in the record.

Regarding his anxiety, the ALJ relied on Dr. Baggs's opinion that Bray "did not appear to be presenting with any significant psychological problems, with the exception of limited IQ and academic functioning." A.R. 287, 231. Moreover, the record reflects that Bray has not sought treatment for his alleged impairments of back pain, visual deficits or anxiety. The ALJ noted one medical record from an unknown source in 2009 indicating that Bray was assessed with depression and anxiety, but no treatment plan was recommended. A.R. at 287; A.R. at 280 (Exhibit C11F). Bray does not elaborate or explain this medical record at the February 2010 hearing before the ALJ or in his briefing to the court. Bray described that he felt "weird around people" and that he gets "real aggravated," however, when asked by the ALJ if he ever took any medication or attended counseling, Bray replied that he "shied away from it." A.R. 21. Although not dispositive, treatment that a claimant has received is a relevant factor in evaluating the alleged intensity and persistence of symptoms. *See Carelli v. Comm'r of Soc. Sec.*, 390 Fed. App'x 429, 436 (6th Cir. 2010) (citing

20 C.F.R. 404.1529(c)(3)(v)(concluding that lack of treatment for mental anxiety was a factor in deciding that anxiety was not a severe impairment)). Therefore, substantial evidence supports the ALJ's conclusion that Bray's back pain, visual deficits and anxiety were not severe impairments.

### 3. 12.05C finding

The ALJ did not err in finding that Bray did not meet the listing in section 12.05C of the regulations for mental retardation. Listing 12.05C provides in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *ie.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation of function.

20 C.F.R. Part 404, subpart P, appendix 1.

To meet the listing for mental retardation, an impairment must satisfy both the diagnostic description in the introductory paragraph and one of the sets of criteria, such as (C) referenced above. Here, the ALJ determined that Bray had the impairment of borderline intellectual functioning, not mental retardation. A.R. 286. He reviewed the psychological testing report from Dr. Baggs, the psychologist who

administered the Wechsler Adult Intelligence Test ("WAIS-III") in 2009 at the agency's request. The WAIS-III showed that Bray had a verbal IQ score of 67, which is in the extremely low to borderline range, a performance score of 74, and full scale IQ score of 67. A.R. at 227. His diagnostic impression was "mild mental retardation," although he noted without further elaboration that "prognosis regarding the claimant's mental condition was judged to be fairly good." A.R. at 231.

It is not disputed that Bray has "a verbal IQ score of 67, a performance IQ score of 74 and a full scale IQ score of 67." *See* A.R. 287. Because the performance and IQ scores are within the listing range, this requirement is met. However, IQ scores alone are insufficient to meet 12.05(C) requirements. *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x 3, 7 (6th Cir. 2004).

In addition to the requisite IQ score, Bray must also demonstrate significantly sub-average general intellectual functioning with deficits in adaptive functioning which manifested prior to age 22 as specified in the diagnostic description of listing 12.05C. Here, the parties dispute the ALJ's finding that "Bray's adaptive functioning is greater than that of a mentally retarded individual." A.R. 288.

Substantial evidence in the record supports the ALJ's decision that Bray is not so limited in adaptive functioning as to meet the Listing in 12.05C. Adaptive skills are social, communicative, and daily-living skills. *See Heller v. Doe*, 509 U.S. 312, 329 (1993). The claimant's activities will be evaluated for "their independence, appropriateness, effectiveness, and sustainability," to determine whether the

9

claimant is "capable of initiating and participating in activities independent of supervision or direction." 20 C.F.R. Part 404, Subpart P., App. 1, Listing 12.00(C).

The ALJ reviewed the reports of non-examining state agency mental health experts Dr. Sillers (Exhibit C6F) and Dr. Jacobsen (Exhibit C7F). These experts found that "Bray's mental allegations are only partially credible," and objective findings indicate that he can "carry out simple instructions . . .complete [a] normal work-week . . .demonstrate adequate judgment . . and maintain[] appropriate hygiene and dress." A.R. at 244.

Although Bray indicated that he "does not like people," he is also a father of three who enjoys watching his son play football, fishing, "work[ing] outside mowing and weed-eating", and occasionally goes to the store "just to have some time away from home." A.R. 23, 153-54. The ALJ determined that Bray is "able to take care of his personal needs, manage money, and can read and do simple math." A.R. 288. Based upon his own observations, the ALJ found that the claimant was able to understand and follow the hearing proceedings and all lines of questioning. A.R. 289. In addition, Bray performed semi-skilled work in the past such as assembly worker and cook. *Id*. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Thus, while Bray did have IQ scores in the requisite range of Listing 12.05C, substantial evidence supports the

ALJ's finding that Bray failed to meet the adaptive skills prong.

At first glance this was a fairly close question given Dr. Baggs's diagnostic impression of "mild mental retardation;" however, the court cannot try the case *de novo* or decide questions of credibility, even if substantial evidence would support the opposite conclusion. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011). Since the court finds that substantial evidence supports the ALJ's determination that Bray's impairment did not satisfy the introductory paragraph of listing 12.05C, the Court need not address whether he had another impairment that imposed significant and additional work-related restrictions.

**4. The ALJ's residual functional capacity finding**

An ALJ must determine a claimant's residual functional capacity (RFC) considering "numerous factors" including "medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 443 (6th Cir. 2010). Here, the ALJ determined that Bray had the RFC to "perform a full range of work at all exertional levels," with limitations to "simple tasks/instructions in non-public, object-oriented settings with no more than casual and infrequent contact with others" and "[he is] precluded from work that requires more than a 4th grade reading level." A.R. 289. Bray argues that the ALJ erred in relying on the opinions of Steve McFarland, who has "no medical credentials," and Dr. Beihn, who Bray alleges did not review the Hoskins report. Bray's argument fails to take into account the "numerous factors" the ALJ must consider in formulating his

RFC opinion.

The ALJ found persuasive that Bray had not obtained treatment for his alleged impairments and the record did not contain any opinions from Bray's own treating or examining physicians. Thus, he concluded that Bray's "history does not suggest a disabling level of pain or other functional limitations." This conclusion is indeed supported by medical evidence in the record. *See* A.R. 242-244 (Mental Residual Functional Capacity Assessment by Dr. Ilze Sillers); A.R. 260-262 (Mental Residual Functional Capacity Assessment by Dr. Jan Jacobsen). Dr. Sillers, who examined Bray on May 20, 2009, determined that Bray could "complete a normal work-week without excessive interruptions from psychologically based symptoms" (A.R. 244); Dr. Jacobsen, who examined Bray on August 17, 2009, also opined that Bray was not significantly limited in his ability to complete a normal work-week (A.R. 261). Therefore, substantial evidence exists in the record to support the ALJ's RFC conclusion.

**5. The ALJ's finding that claimant had an eighth-grade education**

Bray's argument that the ALJ erred in finding that he had an eighth-grade education because he participated in "special education" and test results "place the claimant at a third and fourth grade level respectively in spelling and reading" is not fully developed or explained. *See* R.15 at 16. The ALJ discussed that Bray had an eighth-grade education in his opinion (A.R. 290), yet went on to account for Bray's limitations, specifically stating in his RFC assessment that the "claimant is precluded

from work that requires more than a 4th grade reading level." Moreover, the ALJ asked the VE at the hearing to assume a "restriction to object-oriented work settings that accommodate fourth grade literacy skills." A.R. 27. Because the court will not engage in guess-work regarding Bray's argument that the ALJ erred in finding he had an eighth-grade education, there is nothing further for the court to address.

### 6. The ALJ's hypothetical question posed to the vocational expert

Bray argues that the ALJ did not "adopt the mental restrictions of Dr. Baggs" and that the mental restrictions the ALJ asked the vocational expert (VE) to assume were "less restrictive" than those assessed by non-examining sources. R. 13 at 16. At the hearing the ALJ posed the following hypothetical to the VE:

> "[A]ssuming no exertional limitations, but limitations to simple tasks or instructions in non-public settings, with casual and infrequent contact with others, and further assume a restriction to object-oriented work settings that accommodate fourth grade literacy skills, is that compatible with any of the occupations that Mr. Bray's previously engaged in?"

A.R. 27.

The VE responded that Bray could engage in jobs such as cleaner, lawn worker, and laborer. The ALJ then asked, "if we assumed the person unable to sustain concentration, persistence or pace in a reliable manner on an eight-hour day, five-day-a-week work schedule, could I infer they couldn't do these or any other sorts of jobs?" *Id*. at 28. The VE responded, "That's correct." *Id.* Bray appears to argue that the ALJ should have assumed this latter question, describing an individual unable to sustain a normal work-week, as the appropriate question and hypothetical

13

that he should have relied on in making his determination. See R. 13 at 8.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). For the following reasons, the ALJ's directive that the VE consider Bray's "limitations to simple tasks or instructions in non-public settings, with casual and infrequent contact with others," and "a restriction to object-oriented work settings that accommodate fourth grade literacy skills," is supported by substantial evidence in this instance.

Dr. Baggs interviewed Bray in early 2009. Bray himself reported to Dr. Baggs, "I can read pretty good. I can do math; I can count it on my fingers." A.R. 225. Baggs determined that Bray "did not appear to be presenting with any significant psychological problems, with the exception of limited IQ and academic functioning." A.R. 231. Further, Baggs opined that Bray "has the ability to understand and remember simple instructions" although he may have "mild to moderate difficulty relating appropriately with people in either a work place environment or social setting." *Id.* Thus, the ALJ's hypothetical does account for the limitations found by Dr. Baggs.

14

Dr. Sillers determined that Bray's mental limitations are "only partially credible," finding that he could "complete a normal work week without excessive interruptions from psychologically based symptoms." A.R. 244. Further, he noted that he is capable of maintaining appropriate hygiene and dress and that he could "respond appropriately to supervisors and co-workers" and "generally work with things rather than people." *Id.* The ALJ further noted that "as to concentration, persistence, and pace," there was no evidence that Bray's limitations did not allow for the completion of simple instructions, finding that "the claimant was able to understand and follow the hearing proceedings and all lines of questioning." A.R. at 289.

The ALJ needed to include in the hypothetical only those limitations that he found credible and that were supported by the evidence; he need not have included any disputed limitations that were also negated by Bray's own manner during his in-person testimony at the hearing. *See, e.g., Parks v. Soc. Sec. Admin.*, 413 Fed. App'x 856, 866 (6th Cir. 2011)(finding ALJ's decision to exclude disputed limitation of an "adjustment disorder" appropriate where other opinion evidence in record and claimant's in-person testimony negated such a limitation). As a result, the ALJ's hypothetical question accurately portrayed Bray's impairments and limitations.

### 7. Conflicts between the vocational testimony and the Dictionary of Occupational Titles

Finally, Bray contends that the ALJ failed to resolve known conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT), relying on Social

15

Security Ruling 00-4p. The Dictionary of Occupational Titles, produced by the United States Department of Labor, lists thousands of jobs. 20 C.F.R. § 404.1566(d). When conflicts occur between the VE's testimony and descriptions of those occupations in the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE … [for] evidence to support a determination or decision about whether the claimant is disabled." S.S.R. 00-4p, 2000 WL 1898704, at*2.

In this case the VE specifically opined, "[t]here are cleaners, 18,000 state of Kentucky, 1.46 million United States; dishwashers, 2,800 state of Kentucky, 277,000 United States; vehicle washers, 2,600 state of Kentucky, 192,000 United States." A.R. 27. Thereafter, the ALJ asked the VE if the jobs she testified about were consistent with the DOT, and the VE responded that they were. *Id*. at 28.

According to Bray, the DOT description of vehicle washer requires "general learning ability above the lowest tenth percentile, and it entails the commonsense understanding to carry out detailed but uninvolved written or oral instructions." R. 13 at 18. Bray contends that the ALJ "was well aware that the claimant's intellectual functioning (which falls in the bottom 2% of the national population) is inconsistent with this general learning ability." *Id.*

Bray's argument is misplaced. He is not arguing that there is actually a conflict with the VE's testimony and the DOT, but rather that Bray, given his alleged limitations, cannot perform the jobs as described by the VE. As discussed, there is substantial evidence in the record to support the ALJ's decision. The ALJ stated that

16

he considered the record as a whole and that he found persuasive that Bray had never been hospitalized nor did he ever seek treatment for any of his alleged mental impairments, which diminished his credibility. A.R. at 290.

Moreover, the ALJ complied with SSR 00-4p when he asked the VE whether there was any discrepancy between her opinion and the DOT. *See Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)(holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). Bray's representative had the opportunity to cross-examine the VE and point out any conflicts with the DOT, but failed to do so.

## IV. CONCLUSION

The ALJ's determinations are supported by substantial evidence in the record. Accordingly, **IT IS ORDERED** as follows:

(1) the Commissioner's motion for summary judgment (R. 18) is **GRANTED**;

(2) Bray's motion for summary judgment (R. 12) is **DENIED**.

A separate judgment will issue.
Signed on January 26, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

17